UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-12167-RGS
CRIMINAL ACTION NO. 96-10178-RGS

DURAN PATTERSON

v.

UNITED STATES OF AMERICA

MEMORANDUM AND ORDER ON PETITIONER'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

June 25, 2012

STEARNS, D.J.

Duran Patterson moves pro se to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Patterson argues that his counsel (Robert Galibois) was ineffective in failing to challenge the legal validity of the indictment. Specifically, Patterson alleges that Galibois failed to raise the statute of limitations as a defense, failed to assert the right to a speedy trial, and rendered ineffective assistance during Patterson's guilty plea hearing.[1] In response to a motion by the government, this court

---

[1] The principle of judicial estoppel ordinarily precludes a defendant who has pled guilty from collaterally attacking his plea based on constitutional violations alleged to have occurred prior to the plea (absent a reservation of rights under Fed. R. Crim. P. 11(a)(2)). *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). An exception to this rule allows a petitioner to wage a collateral attack on a guilty plea where the claim of ineffective assistance goes to the validity of the plea itself. *See United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002); *Davila v. United States*, 258 F.3d 448, 451 (6th Cir.

required Patterson to waive any claim of attorney-client privilege before proceeding with his claims against Galibois. The waiver having been duly executed, Galibois submitted an affidavit disputing the substance of Patterson's recounting of the advice he rendered regarding a guilty plea. Patterson's motion will be denied for the reasons set out below.

## BACKGROUND

On June 20, 1996, Patterson was indicted for conspiring to import cocaine, a controlled substance, into the United States. The indictment was a fruit of an investigation that began in May of 1995, and which led to the interception and seizure of bottles of liquid cocaine being smuggled from the island of Jamaica to Boston, Massachusetts. Patterson avoided capture and was declared a fugitive on April 20, 1999. He was finally arrested on February 5, 2010 in the Eastern District of New York, where he had been hiding more or less in plain sight. Patterson pled guilty on January 10, 2011, without reaching any plea agreement with the government. On May 5, 2011, Patterson was sentenced by this court to a term of fifty-seven months in prison. Attorney Galibois represented Patterson from August 10, 2010, through May 2, 2011.

## STANDARD OF REVIEW

Section 2255 is not a substitute for direct appeal, but rather provides for post-

---

2001).

conviction relief in four limited instances: "[I]f the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to direct attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). "The catch-all fourth category includes only assignments of error that reveal 'fundamental defect[s]' which, if uncorrected, will 'result[] in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" *Id.,* quoting *Hill v. United States*, 368 U.S. 424, 428 (1962). A cognizable section 2255 claim, unless it is constitutional or jurisdictional in nature, must reveal "exceptional circumstances" compelling redress. *David*, 134 F.3d at 474. The petitioner bears the burden of demonstrating an entitlement to relief. *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980).

Patterson attempts to mount a constitutional attack by arguing violations of his Sixth Amendment right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). The threshold for such an attack is high. The right to effective counsel does not mean a right to perfect counsel. Moreover, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might

3

be considered sound trial strategy.'" *Id.* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). The path the reviewing court must follow is well charted.

> First, a reviewing court must assess the proficiency of counsel's performance under prevailing professional norms . . . . This evaluation demands a fairly tolerant approach; after all, the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense . . . . The second line of inquiry . . . entails a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994) (internal quotation marks omitted). Where, as here, a defendant has pled guilty to a charge, "the prejudice prong of the test requires him to show that, but for his counsel's unprofessional errors, he probably would have insisted on his right to trial." *United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751 (1997).

## DISCUSSION

**Statute of Limitations**

Patterson's first argument is based on a misreading of the general statute of limitations provided by 18 U.S.C. § 3282(a). Section 3282(a) provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." *Id.* Patterson maintains that Galibois should have raised a statute of limitations defense because of the more than five years that elapsed between

4

the date the indictment was returned and the date of his arrest. The statute of limitations, however, sets a time limit of five years from the date of the commission of the offense to the commencement by way of an indictment or complaint of the prosecution. It sets no time limit on the completion of the prosecution itself. As Patterson was charged on June 20, 1996, with a course of criminal conduct that culminated on or around August 21, 1995, the statute of limitations does not bar the prosecution. The reason is somewhat self-evident. A criminal prosecution is not a game of hide-and-seek in which a criminal who successfully evades being tagged as "it" for an extended period of time is declared home free. Because Patterson was indicted well within the five-year limitation set by the statute, the belated tag is no less valid.

**Speedy Trial Act**

Patterson's speedy trial argument is based on a similar misreading of the Speedy Trial Act (STA), 18 U.S.C. 3161(c)(1).[2] Patterson argues that Galibois was ineffective for failing to assert Patterson's right to a speedy trial under the STA. Allegedly, the

---

[2] Section 3161(c)(1) provides in part that "in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."

5

STA violation occurred because of the fourteen-year delay between Patterson's indictment and his arrest. The STA, however, is tolled during any period of time in which a defendant is "absent or unavailable." 18 U.S.C. § 3161(h)(3)(A). A defendant is absent or unavailable "when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence." 18 U.S.C. § 3161(h)(3)(B).

While Patterson maintains that he was not a fugitive in any willful sense between his disappearance in 1999 and his serendipitous arrest in 2010, he provides no facts to show what actions the government took, or should have taken, in attempting to discover his whereabouts. Instead, he argues that the government did not conduct the chase with due strenuousness, and has failed to come forward with reasons justifying its inertia. The latter assertion is not quite true (and, in any event, misstates the government's burden). The government for its part maintains that the spelling of Patterson's name in its files was erroneous and only corrected just weeks before his arrest in 2010, and moreover, that it takes two to tango. It is manifest that Patterson at all times was well aware that he was a wanted man and he did nothing of an affirmative nature to disclose the fact of his extended presence in the United States to the authorities. Patterson relies on case law and dictionary lexicography to argue that he was not a "fugitive," at least as Blackstone or Black's would define it.

All of this might have some appeal to a notes editor for a law journal, but the issue in this case is not whether Patterson would have been considered a fugitive or an outlaw by a court at the ancient common law, but whether Patterson was absent or unavailable under section 3161(h)(3)(A). By asserting mere conclusory statements and dictionary dicta, Patterson has not met his burden of proving that the section 3161(h)(3)(A) exclusion does not apply.

The STA automatically excludes any reasonable delay that results from the pendency of pretrial motions, from their filing date to the disposition date. 18 U.S.C. § 3161(h)(1)(D). Also, any delay that occurs because of a "transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure" is automatically excluded from the STA computation. 18 U.S.C. § 3161(h)(1)(E). While Patterson was indicted in 1996, the formal prosecution did not commence until his February 10, 2010 court appearance because he was "unavailable or absent." Further delays were attributable to multiple motions to exclude time filed or assented to by Galibois while discovery was underway.[3] Between March 31, 2010, and March 21, 2011, seven such motions to exclude time were filed, including the periods from May 24, 2010, to February 28, 2011, and April 21, 2011, to May 11, 2011. When these periods are aggregated with the time during which Patterson was absent or

---

[3] Patterson does not challenge the fact or validity of these motions.

unavailable, it is manifest that there was no violation of the STA. *See* 18 U.S.C. §§ 3161(h)(1)(A), 3161(h)(1)(D), and 3161(h)(1)(E).[4]

**Voluntariness of the Plea**

Patterson levels a volley of supposed omissions against Galibois: his alleged failure to apprise Patterson of the statute of limitations; his failure to explain the right to a speedy trial; and his failure to present arguments based on these grounds to the court. The cumulative effect, Patterson argues, was to render his guilty plea involuntary for reasons of ineffective assistance of counsel. Patterson faces an initial and nearly insurmountable hurdle. He did not attempt to withdraw his plea in the four-month interval between its

---

[4] For similar reasons, there was no Sixth Amendment violation. *See Barker v. Wingo*, 407 U.S. 514 (1972). The *Barker* Court adopted a balancing test weighing the conduct of the prosecution and the defendant. *Id.* at 530. The four factors the Court identified to assess whether the defendant had been deprived of the right to a speedy trial were: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Id.* While the delay was significant, it occurred because Patterson absented himself from prosecution, and filed multiple motions to exclude time to facilitate his discovery requests. Moreover, at no point during the purported delay, nor during the proceedings leading to his plea, did Patterson assert that his right to a speedy trial had been violated. Finally, Patterson advances only a presumption of prejudice inferred from the length of the delay itself. However, as noted in the government's opposition, a rebuttable presumption of prejudice without affirmative proof only attaches to Sixth Amendment challenges where the defendant himself is not responsible for the delay. *Rashad v. Walsh*, 300 F.3d 27, 40-41 (1st Cir. 2002) ("To the extent that a defendant bears responsibility for causing periods of delay–such as when he goes to ground in an effort to evade prosecution–any prejudice resulting therefrom is his own fault and cannot redound to his benefit."). Balancing Patterson's culpable behavior against the prosecution's blameless conduct, there was no *Barker* Sixth Amendment violation.

entry and his sentencing, nor did he attempt to challenge the validity of the plea on direct appeal.

> It is a bedrock principle that, under ordinary circumstances, the voluntariness of a guilty plea can be questioned on collateral review under 28 U.S.C. § 2255 only if, and to the extent that, the plea [or sentence] has been challenged on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998). If a federal habeas petitioner challenges his conviction or sentence on a ground that he did not advance on direct appeal, his claim is deemed procedurally defaulted. *Id*.

*Oakes v. United States*, 400 F.3d 92, 95 (1st Cir. 2005). *See also Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). When a defendant has procedurally defaulted by failing to raise a claim on direct review, he may only proceed by way of collateral attack by demonstrating cause for the default and actual prejudice, or that he is actually innocent of the offense (or the sentence). *See Murray v. Carrier*, 477 U.S. 478, 485-486, 496 (1986).

Patterson changed his plea to guilty on Counts 1-3 and Counts 5-8 of the indictment at a hearing convened for that purpose on January 10, 2011. At the hearing, Patterson pled guilty to conspiring to import a controlled substance, attempting to import a controlled substance, and importing a controlled substance in violation of 21 U.S.C. § 952(a). In conducting the Rule 11 colloquy, the court explained the nature of the charges to Patterson.

> THE COURT: All right. That being the case, I'm going to then be relatively brief, but let me start with this concept of conspiracy.

A conspiracy under federal law, as it would be under state law, is an agreement between two or among three or more persons to do something that the law forbids. In this case what obviously the law forbids is the importation into the U.S. of a controlled substance, a narcotic drug.

The essence of a conspiracy is not so much the acts that are done to accomplish the conspiracy. The essence is rather the agreement itself; that is, the combination of two or more people to do something unlawfully.

To prove a conspiracy the government, of course, has to prove that a defendant knew of the existence of the conspiracy, not that he necessarily knew every detail or even the identity of every conspirator, but he has to know the general outline of the conspiracy; and, moreover, the government has to prove that a defendant willingly and knowingly agreed to become part of the conspiracy with the intent of seeing the conspiracy succeed in its goals.

So is that clear?

THE DEFENDANT: Yes, sir.

THE COURT: So it's an agreement to do something illegal.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Here, and then this gets repeated actually in the remaining counts of the indictment in different forms, various specific acts or attempts at importation, Count 2, for example, of the indictment which charges an attempt on a specific date, in this case, March 5th, 1995, to actually import a substance unlawfully into the U.S.

An attempt is an effort to bring about a crime that nearly reaches fruition but doesn't quite succeed. It comes short for whatever reason of its intended goal, but, again, there has to be a specific intent on the part of the defendant to commit the crime so something intervenes, usually a factual issue that intercepts the commission of the crime, and disrupts it.

The remaining counts of the indictment allege specific importations of

controlled substances again on specific dates; again, March 25, 1995, in Count 3; Count 4 is not part of the plea, and Counts 5 through 8 again allege importations on April 23rd, 1995, April 27th, 1995, May 1st, 1995, and May 14th, 1995. In each of these instances it alleges that the District of Massachusetts, which is where we are now, where we're seated, was affected; that is, was the destination of the drugs that were being imported.

Well, are there any questions that you have about the law or the nature of the indictment itself?

THE DEFENDANT: No, sir.

R. 11 Hr'g Tr. 11-13, Jan. 10, 2011.

The record shows that Patterson understood the charges to which he was pleading guilty. The court then focused directly on whether Patterson entered the guilty plea voluntarily.

THE COURT: Are you pleading guilty willingly, freely, and voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone coerced you in a physical sense into pleading guilty?

THE DEFENDANT: No, sir.

THE COURT: Have any secret promises been made to induce you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Have any threats been made other than obviously the threat of being prosecuted?

>THE DEFENDANT: No, sir.
>
>THE COURT: Have you had sufficient time to discuss with Mr. Galibois the charges in the case, your rights, your possible defenses, and the consequences of pleading guilty?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Do you feel he's acted at all times in your best interests?
>
>THE DEFENDANT: Yes, sir.

*Id.* 28-29. As the record makes clear, Patterson explicitly acknowledged that his plea was informed and voluntary, and that he was satisfied with Galibois's representation. At no point during the Rule 11 colloquy did Patterson even hint otherwise.

If more is needed, Galibois states in a sworn affidavit that he discussed the statute of limitations defense with Patterson and that "I never advised Mr. Patterson that seven years is the statute of limitations in state court . . . [and] I never told Mr. Patterson that the 'five year statute of limitation starts to run from the date of an arrest . . . .'" Galibois Aff. ¶¶ 13-14. "[T]he conversation in regard to Mr. Patterson's case involved certainly the potential evidence that would be offered against him." *Id.* ¶ 15. Galibois states further that he discussed with Patterson the plea agreement and the damaging prospect of the testimony of co-defendant Joseph Bey, and that it "undoubtedly was a considering factor in proceeding with a guilty plea." *Id.* ¶¶ 18-19. At the time of his guilty plea, Patterson was also aware of the possible benefits of pleading guilty. "[T]he undersigned states that he did

12

discuss the benefits of a guilty plea. Indeed, this included his ability to exercise an option commonly referred to as the 'Safety Valve.'" *Id.* ¶ 16. In light of the record, and Galibois's affidavit, it is beyond cavil that Patterson pled guilty knowingly, willingly, and voluntarily, and that Galibois's representation easily satisfied the Sixth Amendment standard and did not render Patterson's plea involuntary. In short, this is nothing but a classic case of buyer's remorse.

ORDER

For the foregoing reasons, the motion to vacate, set aside, or correct sentence is <u>DENIED</u>. The Clerk will enter judgment accordingly and close the case. Having entered an Order adverse to Patterson, he is advised that an application for a certificate of appealability must be filed with this court within twenty-one days of this Order or a certificate of appealability will be deemed <u>DENIED</u>. The Order disposing of the § 2255 petition will become final for purposes of the running of the appeal period after the 21 days expires or, if an application for a certificate of appealability is filed, after disposition of that application.

SO ORDERED.
/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE